UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
PEORIA DIVISION

| | |
|---|---|
| CRAIG M. JOHNSON;<br>MARCIA L. JOHNSON; and<br>GALESBURG ELECTRIC/INDUSTRIAL<br>SUPPLY, INC., an Illinois corporation; | No.  08-1267 |
| Plaintiffs, | |
| vs. | Judge McDade |
| | Magistrate Gorman |
| SECURITY MUTUAL LIFE INSURANCE<br>COMPANY OF NEW YORK, a New York<br>corporation;<br>DAVID K. FENSLER, not personally, but<br>as trustee of the United Employee Benefit<br>Fund;<br>UNITED EMPLOYEE BENEFIT FUND;<br>an Illinois nonprofit corporation;<br>HERBERT O. MCDOWELL III, not<br>personally, but as director of the<br>Professional Workers Master Contract<br>Group;<br>GERALD KOENNING, personally, and as<br>director of Employers Benefits, Inc.;<br>LOU DELPIERRE, personally, and as<br>owner of Employers Benefits, Inc.; and<br>EMPLOYERS BENEFITS, INC, an Illinois<br>corporation. | |
| Defendants. | |

## FIRST AMENDED COMPLAINT

Plaintiffs Craig M. Johnson ("Craig"), Marcia L. Johnson ("Marcia"), and Galesburg

Electric/Industrial Supply, Inc., an Illinois corporation ("Galesburg Electric"), by Barry M.

Barash and Robyn J. Mallon of Barash & Everett, LLC, their attorneys, complaining of

defendants Security Mutual Life Insurance Company of New York ("Security Mutual"),

David K. Fensler, not personally, but as trustee of the United Employee Benefit Fund

("Fensler"), the United Employee Benefit Fund ("Benefit Fund"), Herbert McDowell III, not

personally, but as director of the Professional Workers Master Contract Group

("McDowell"), Gerald Koenning, personally, and as director of Employers Benefits, Inc. ("Koenning"), Lou Delpierre, personally, and as owner of Employers Benefits, Inc. ("Delpierre"), and Employers Benefits Inc., ("Employers Benefits"), and Illinois company, allege:

## I. PRELIMINARY STATEMENT

1.      This complaint seeks relief with respect to a group insurance plan that was determined by the Internal Revenue Service ("IRS") to be an abusive tax shelter.

## II. JURISDICTION; VENUE

2.      Jurisdiction is conferred by 28 U.S.C. §1331.

3.      Venue is proper in the Peoria Division of the Central District of Illinois as a substantial portion of the causes of action arose there, and the plaintiffs are residents in that location.  28 U.S.C. §1391(b)(2); CDIL-LR 40.1(A).

## III. PARTIES

4.      At all times material hereto, plaintiffs were citizens of Knox County, Illinois, with their principal places of business and residence in Galesburg, Illinois.

5.      Defendant Security Mutual was at all times material hereto incorporated in and a citizen of the State of New York with its principal place of business at Binghamton, New York.

6.      Defendants Fensler and Benefit Fund were at all times material hereto citizens of the State of Illinois with their principal places of business in Northbrook, Cook County, Illinois.

7.      Defendant McDowell was at all times material hereto a citizen of the State of Illinois with his principal place of business in Illinois.

8.      Defendants Koenning and Delpierre were at all times material hereto citizens of the State of Illinois with their principal place of business in Illinois and defendant Employers Benefits, Inc. was at all times material hereto a citizen of the State of Illinois with its principal place of business in Illinois.

3

## IV.  FACTUAL ALLEGATIONS

9.     Craig M. Johnson is the sole shareholder of Galesburg Electric/Industrial Supply, Inc., ("Galesburg Electric") a company located in Galesburg, Illinois, which sells electrical products to contractors and consumers.

10.     In the mid part of 1996, Koenning, an insurance salesman with Employers Benefits, approached Craig and suggested that he start a trade union at Galesburg Electric.  Koenning asserted that life insurance costs for the employees in the union would then be deductible for tax purposes.  Koenning further said that the proposed welfare benefit plan ("Plan") would be organized under and subject to the provisions of the Employees' Retirement Income Security Act ("ERISA") 29 USC §§1001-1381.  Koenning visited Craig at Craig's workplace multiple times in 1996 to promote the union and life insurance, sometimes accompanied by his associate, Delpierre, who reiterated the same statements and promises Koenning made to Craig.

11.     Craig accepted and relied on Koenning's and Delpierre's advice and thereafter established the union.  Shortly thereafter, Craig purchased the life insurance through Koenning.  The life insurance coverage was provided by Security Mutual Life Insurance.

12.     Koenning and Delpierre also represented to Craig that once the union was established for employees then they could contribute premiums out of their paychecks which would go into a welfare fund for their benefit which was set up by the union.

13.     Significantly, Koenning and Delpierre told Craig that the insurance premium contributions would be tax-deductible from the employees' income.  Craig relied on these representations, to his detriment and to the detriment of Marcia and Galesburg Electric.

14.     Of Galesburg Electric's 25 employees, six joined the union; it was called UNITE Local 2411; these employees are represented by Fensler.

15.     Upon joining the union, employees were given union cards and union dues were paid.

4

16.     Galesburg Electric's union representation was through McDowell, who also was a director with the Master Contract Group. Master Contract Group also administered the Death Benefit Only Plan, the type of plan adopted by Galesburg Electric. The Master Contract Group produced marketing paraphernalia explaining the benefits of the welfare fund and gave this information to Craig. **(Exhibit 1)**.

17.     The face amount of the insurance policies are:

| | |
|---|---|
| Craig Johnson | $1,000,000 |
| Eric Johnson | $247,170 |
| Preston Johnson | $222,120 |
| Barbara Nace | $222,120 |
| Patricia Williams | $278,500 |
| Lisa Woodruff | $200,000 |

18.     The Plan sponsors are the Trustees of the United Employee Benefit Fund, and these trustees are listed as Fensler and Anthony J. Monaco.  Fensler is also the Plan Administrator.  The assets of the Plan are held by these Trustees of the Benefit Fund. **(Exhibit 2, p.5)**.

19.     The Plan was marketed as a welfare benefit plan generally organized under IRC §501(c)(9) which allows for contributions to a Voluntary Employees' Beneficiary Association ("VEBA").

20.     Contributing to a VEBA allows participants to deduct from income tax their life insurance premium payments, and this particular Plan was set up to be a "death benefit only" plan through which participants could deduct their life insurance premium payments

21.     Further, IRC §501(A)(f)(5) states that there is to be no tax on a welfare benefit fund under a collective bargaining arrangement. The collective bargaining agreement also assures that the Plan will not be subject to traditional nondiscrimination rules that apply to other pension plans, which have income limitations.

22.     Galesburg Electric never had or needed a union until one was suggested by Koenning and Delpierre for its tax benefits and until the union was marketed as a tax deduction vehicle by Fensler, McDowell, and Benefit Fund.

23.     Craig was told by Koenning and Delpierre that if he implemented a collective bargaining agreement at Galesburg Electric, then contributions to it would be tax deductible and no taxes would be paid by the Plan.  Plaintiffs relied on these representations (which were material) to their detriment.

24.     Craig was told by Koenning and Delpierre that the collective bargaining agreement set up by McDowell was legitimate, and McDowell provided what appeared to be official union forms for Craig to sign and which Craig believed created the union.

25.     Craig was also given marketing materials by the Benefit Fund (of which Fensler was the administrator) that the proposed Plan had survived IRS scrutiny and no foreseeable problems with the Plan existed.   **(Exhibit 3, p.19)**.

26.     The IRS has made many rulings on these types of plans that attempt to avoid tax on contributions to the fund by holding investments in life insurance policies and by having the employer set up a collective bargaining arrangement among its workforce.

27.     IRS Notices 95-34, 2000-15, and 2003-24 target and warn of these types of VEBAs, and specifically, Notice 2003-24 states that the IRS will only allow deductions for contributions to these funds if the fund is the result of good faith bargaining on the part of the union. **(Exhibits 4, 5, and 6 respectively)**.

28.     In October 2006, the Plan came under scrutiny of IRS.

29.     After concluding its investigation in 2007, the IRS determined that the Plan was an abusive tax shelter and assessed penalties against Craig and Marcia  in the amount of $123,457.51.  (**Exhibits 7 and 8**).

30.     The IRS based its decision on its finding that the union was not the result of good faith bargaining; but rather, the union was a sham that was set up to achieve the benefit of a tax shelter rather than bring about an actual union arrangement that benefitted the employees and therefore was not entitled to any tax deductions. (**Exhibit 7, pp. 9-11**).

31.     Craig was never informed by any Defendant that the union might be determined to be an improper tax shelter or that it was an issue that IRS was scrutinizing,

and that it was possible that none of the insurance premiums would be tax deductible.

32.     Craig and Marcia settled the IRS claim relating to the abusive tax shelter by paying IRS $123,457.51 and the Illinois Department of Revenue $11,754.42 at various times throughout 2007.  (**Exhibit 8**).

**COUNT I**
**FRAUD**
**[AGAINST KOENNING, DELPIERRE, AND EMPLOYERS BENEFITS]**

Plaintiffs incorporate by reference the factual allegations of paragraphs 1-32 and pleading further say:

33.    In the middle part of 1996, Koenning told Craig in person at Galesburg, Illinois, that he (Koenning) could enroll Craig and Galesburg Electric in a welfare benefit plan which would provide for tax-deductible contributions and tax-free distributions. Koenning and Delpierre made multiple trips in the middle part of 1996 to Galesburg Electric in order to promote this welfare benefit plan to Craig, and Koenning and Delpierre definitively told Craig that the welfare benefit plan was completely legal.

34.    Relying on Koenning's and Delpierre's advice, Craig caused Galesburg Electric to institute the Plan.

35.    Koenning's and Delpierre's representations were false; at the time Koenning and Delpierre made those representations to Craig and Galesburg Electric, Koenning and Delpierre knew they were false; plaintiffs learned of the falsity when the Plan which Koenning and Delpierre promoted and installed came under IRS attack.

36.    As a direct and proximate result of Koenning's and Delpierre's misrepresentations, Craig and Marcia were required to pay the IRS taxes, penalties and interest on their joint tax return.

37.    Craig and Marcia relied on Koenning's and Delpierre's representations that contributions to the Plan would be tax-deductible and distributions from the plan would be tax-free.

38.    Craig and Marcia relied on Koenning's and Delpierre's statements to their detriment.

RELIEF SOUGHT:

a.    Judgment against defendants, jointly and severally, in
       an amount in excess of $135,211.93;

8

b.      Punitive damages;

c.      Prejudgment interest;

d.      Attorney's fees [29 USCA §1132(g)(1)];

e.      Costs;

f.      Award any such other and further relief as the court deems just and proper.

## COUNT II
## FRAUD AND FRAUDULENT CONCEALMENT
## [AGAINST MCDOWELL, FENSLER, AND BENEFIT FUND]

Plaintiffs incorporate by reference the factual allegations of paragraphs 1-38 and pleading further say:

39.     The welfare benefit plan in the case at bar can most accurately be described as a plan that exempts life insurance premiums from taxation under a collective bargaining agreement, or a 29 USC 419(A)(f)(5) plan.

40.     The Plan's sponsors are the Trustees of the Benefit Fund, and the Plan Administrator and employer trustee is Fensler.  **(Exhibit 2, p. 5).**

41.     The Benefit Fund provided Plan marketing material to Craig in 1996 in order to induce him to institute the Plan. **(Exhibit 3).**

42.     This information included statements that employer contributions to Benefit Fund are deductible and that participants in the Plan do not pay tax on amounts contributed to the Plan for them. **(Exhibit 3, p. 8).**

43.     The trustees of the Plan, including Fensler, state that they are fiduciaries under the Plan. **(Exhibit 3, p. 9, paragraph 5).**

44.     The trustees are charged with protecting the fund's assets and acting with the greatest possible care.  **(Exhibit 3, p. 9, paragraph 5).**

45.     Benefit Fund admits that it recognizes the importance of a proper collective bargaining arrangement in the employer's quest to obtain tax deductions in the type of welfare benefit plan they offer. **(Exhibit 3, p.7).**

46.     Benefit Fund gave Craig an IRS Determination Letter dated April 26, 1994 in its marketing materials which was alleged by Benefit Fund to state that "[t]he ruling validates and confirms the program's (Benefit Fund's) claim to legitimacy, both as to structure and substance" and that the IRS had formally approved Benefit Fund's income tax exemption.  **(Exhibit 3, p. 19).**

47.     Benefit Fund also claims that the Determination Letter serves to approve

"the Fund's exemption from federal income taxes under Section 501(c)(9) of the Internal Revenue Code." **(Exhibit 3, p. 19)**.

48.      Benefit Fund's marketing materials also state that although the IRS "presumes prospective benefit programs to be shams until they prove themselves otherwise, it is most significant that the UEBF plan has withstood such extensive scrutiny and detailed probing." **(Exhibit 3, p. 19)**.

49.      Benefit Fund further states that other union plans are attacked by IRS because they are not legitimate labor organizations, but the IRS Determination Letter ruling bars such an argument as against Benefit Fund. **(Exhibit 3, p. 19, paragraph 1)**.

50.      Even though the Determination Letter does not make a finding on the deductibility of employer contributions to the Plan, Benefit Fund states that their plan is consistent with benefits allowed in IRC §419 and exempted from tax under §501(c)(9), so the participating employer's contributions therefore must be tax deductible too. **(Exhibit 3, pp.17-20)**.

51.      Benefit Fund concealed the facts that its union was not impervious to IRS scrutiny and that the Determination Letter did not actually state that contributions to the Plan were deductible; and in fact, IRS Notice 2003-24 states that these §419A(f)(5) plans generally "do not provide the tax deductions claimed by their promoters." **(Exhibit 6, p.3, paragraphs 5-6)**.

52.      IRS Notice 2003-24 further states that IRS wants to "emphasize that the fact that a trust used to provide benefits under an arrangement may have received a determination letter stating that the trust is exempt under §501(c)(9) of the Code has no relevance to the issues discussed in this Notice." Those issues involve plan arrangements exactly like the Plan in the case at bar, and the notice applies to §419A(f)(5) Plans.  **(Exhibit 6, pp. 3-4)**.

53.      Craig is not a tax expert or professional, and he relied on the statements that the Determination Letter from the IRS meant that he would be afforded the tax

benefits he was promised and that the set up of the union bona fide.

54. Craig relied on these assertions to his detriment, since the union was found to not be the result of arm's length collective bargaining, even though Benefit Fund promises that its Plan and the collective bargaining arrangement is valid for the purpose of tax deductible contributions.

55. As a Plan trustee, Fensler knew or should have known that the IRS Determination Letter did not make the rulings that Benefit Fund purported, and in fact, IRS did not comment on the deductibility of employer contributions.

56. As a Plan trustee, Fensler knew or should have known that the Fund's union arrangement was not the result of good faith and arm's length bargaining, or at least that it was possible that IRS would not recognize the union and would deny a tax deduction, and Fensler had a duty to disclose this material fact.

57. Fensler and McDowell, as Plan trustee and Death Benefit Only Plan administrator respectively, should have known that IRS warned against the riskiness of these sorts of plans in Notices 95-34, 2000-15, and 2003-24; instead, Benefit Fund explains these problems away in an attempt to induce participants to join the Plan. **(Exhibit 3).**

58. Craig relied on Benefit Fund's assertion that the union was a legitimate entity that entitled him to a special tax deduction, and Fensler and McDowell concealed material facts concerning the IRS scrutiny and warnings of these plans with the intent to induce reliance and gain Craig's participation in the Plan.

59. Benefit Fund's marketing materials knowingly and purposefully mislead potential customers as to the veracity of their Plan, and concealed or discounted any facts that may indicate a negative impact.

60. Benefit Fund's assertions and McDowell's formation of a non bona fide union in conjunction with Benefit Fund was the proximate cause of Craig's damages in the amount of $135,211.93, since he believed the Plan would not be subject to IRS

scrutiny and possible disallowance of tax benefits.

RELIEF SOUGHT:

a. Judgment against defendants, jointly and severally, in an amount in excess of $135,211.93;

b. Punitive damages;

c. Prejudgment interest;

d. Attorney's fees [29 USCA §1132(g)(1)];

e. Costs;

f. Award any such other and further relief as the court deems just and proper.

## COUNT III

**CLARIFICATION OF PLAN RIGHTS AND FUTURE RIGHTS UNDER THE PLAN AND
RECOVERY OF BENEFITS DUE UNDER THE PLAN
[29 USCA §1132(a)(1)(B)]
[AGAINST BENEFIT FUND, FENSLER, MCDOWELL, AND MUTUAL LIFE]**

Plaintiffs incorporate by reference the factual allegations of paragraphs 1-60 and
pleading further say:

61.     29 USCA §1132(a)(1)(B) allows a plan participant to bring a civil action to
clarify his rights under the plan or to recover benefits due under the plan.

62.     Craig and Marcia wish to disassociate themselves from the plan and
terminate their involvement while avoiding any future tax penalty.

63.   Instructions were sent to the plan administrator to send Craig and Marcia
the surrender value of their insurance policies.

64.     The Fund has refused Craig's requests for surrender. **(Exhibit 9)**.

65.     Craig and Marcia seek clarification as to their rights in the plan and their
ability to discontinue the plan and surrender the insurance policies.

66.     Craig and Marcia further seek clarification as to their future rights under
the plan in light of action taken by the IRS that determined the union to be invalid.

67.     Further, Craig has ceased contributing union dues to the plan because the
IRS found the collective bargaining agreement to be invalid. **(Exhibit 10).**

68.     Despite the invalidity of the union, Craig believes the Benefit Fund
converted part of Craig's account to pay past union dues without Craig's consent.

69.     Craig seeks the return of any misappropriated as they are part of Craig's
personal account and affect the benefits due him by diminishing funds in his account.

RELIEF SOUGHT:

     a.      Judgment against defendants;

     b.      Clarification as to future benefits under the Plan;

     c.      Declaration as to right to future benefits under the Plan and ability to terminate the Plan or Plaintiffs' participation in the Plan;

     d.      Order for surrender of the insurance policies and for restitution of premiums paid or other benefits due under the Plan;

     e.      Rescission of Plaintiffs' contract to purchase insurance or any other contract for commissions or other services made between Plaintiffs and Defendants.

     f.      Attorneys' fees [29 USCA §1132(g)(1)];

     g.      Costs;

     h.      Award any such other and further relief as the court deems just and proper.

## COUNT IV
## NEGLIGENCE
## [AGAINST ALL DEFENDANTS]

Plaintiffs incorporate by reference the factual allegations of paragraphs 1-69 and pleading further say:

70.    As insurance professionals acting individually and as agents of their employers, Fensler, Koenning, Delpierre, and McDowell have a duty to customers to accurately represent their product.

71.    Defendants also had a duty to exercise reasonable care in tendering financial advice to Plaintiffs and to disclose to Plaintiffs all material facts of the Plan so that Plaintiffs could make an informed decision on whether to enroll in the Plan or not.

72.    Defendants breached those duties by promoting a plan that the IRS warned would be an abusive tax shelter if there were no good faith bargaining agreement.

73.    Defendants knew or had reason to know that the assertions as to tax deductibility were untrue; and in fact, case law and IRS notices beginning in 1995 would have alerted an insurance professional as to the danger of these plans and their potential for tax liability. **(Exhibits 4, 5, and 6).**

74.    Plaintiffs relied on the negligent assertions of Defendants that the life insurance would serve as a tax deductible vehicle in a collectively bargained union environment, and Plaintiffs were never informed of the risks of the Plan, thereby disabling them from making an informed decision as to whether to institute the plan.

75.    Defendants' statements and marketing materials promoting these plans in light of negative IRS notices as well as the misstatement of the import and effect of the IRS Determination Letter were the proximate causes of Plaintiffs' participation in the Plan and Plaintiffs subsequent damages for taxes and penalties.

RELIEF SOUGHT:

a.   Judgment against defendants, jointly and severally, in an amount in excess of $135,211.93;

b.   Restitution of commissions paid and insurance premiums paid;

c.   Prejudgment interest;

d.   Attorney's fees [29 USCA §1132(g)(1)];

e.   Costs;

f.   Award any such other and further relief as the court deems just and proper.

COUNT V
PROFESSIONAL NEGLIGENCE
[AGAINST FENSLER, DELPIERRE, KOENNING, MCDOWELL, AND EMPLOYERS
BENEFITS]

Plaintiffs incorporate by reference the factual allegations of paragraphs 1-75 and pleading further say:

76.    As trustee of Benefit Fund, Fensler had a duty to disclose any adverse IRS rulings or adverse information affecting the plan to interested parties such as Craig, as well as act with due to care to safeguard the Plan's assets as Benefit Fund states in its Summary Plan Description ("SPD") which Craig relied upon. **(Exhibit 2, p. 4-5).**

.    77.    Fensler, Koenning, Delpierre, and McDowell are all insurance professionals and were acting as agents of their employers or as individuals in the transaction at issue.

78.    McDowell has held himself out as an expert on §519A(f)(5) Plans. He has lectured on complex VEBA plans and is credited with writing a VEBA plan along with another author, Marshall D. Katzman. **(Exhibit 11, p.1)**.

79.    Under the SPD, the Plan Administrator (Fensler) has the duty to determine "construction and interpretation of the Plan, and decides all questions concerning eligibility for participation and benefits, in its sole discretion." **(Exhibit 2, p. 4).**

80.    In construing the Plan and its interpretation, Fensler should have given proper weight to the various IRS notices disparaging these types of plans or should have at least warned that there was a risk that the union could be found invalid based on the knowledge of IRS scrutiny of these plans.

81.    Benefit Fund's marketing materials relied on the IRS determination letter that the Plan would be tax free even though the determination letter does not address the non taxability of employer contributions.  **(Exhibit 3, p. 17-19)**.

18

82.    The Benefit Fund marketing materials specifically stated:

"[i]n a current regulatory environment that has the IRS scrutinizing plan applications for deceptive or irregular practices, presuming prospective benefit programs to be shams until they prove themselves otherwise, it is most significant that the UEBF plan has withstood such extensive scrutiny and detailed probing.  The ruling validates and confirms the progarm's claim to legitimacy, both as to structure and substance .  **(Exhibit 3, p. 19, paragraph 1).**

83.    Defendants collectively breached their professional duties by misleading Plaintiffs into believing the Plan was legitimate as recognized by the authority of IRS, and by recommending a Plan to a consumer that Defendants had superior knowledge of and  knew or should have known of the IRS Notices that disallowed tax deductions for unions that were set up without a good faith bargaining agreement.

84.    Further, in its marketing material, Benefit Fund relies on a 1994 determination letter from the IRS when it states "In April 1994, the Internal Revenue Service formally approved UEBF as a tax-exempt Voluntary Employees' Beneficiary Association (VEBA) under section 501(c)(9) of the Internal Revenue Code." **(Exhibit 3, p.4, paragraph 2)**.

85.    Defendants' recommendations (including their statements and marketing materials) to Plaintiffs to institute the plan were the proximate causes of Plaintiffs' losses since Plaintiffs were assessed tax penalties due to the terms of the Plan and due to the way in which Defendants set up Plaintiffs' union.

86.    Plaintiffs damages include insurance premiums paid into an improperly constructed Plan and union that did not produce the promised benefits as well as taxes and penalties paid to the IRS.

RELIEF SOUGHT:

  a.   Judgment against defendants, jointly and severally, in
       an amount in excess of $135,211.93;

  b.   Restitution of commissions paid, union dues paid,
  and  insurance premiums paid.

  c.   Prejudgment interest;

  d.   Attorney's fees [29 USCA §1132(g)(1)];

  e.   Costs;

  f.   Award any such other and further relief as the court
       deems just and proper.

**COUNT VI**
**BREACH OF CONTRACT**
**[AGAINST FENSLER, BENEFIT FUND, AND MCDOWELL]**

Plaintiffs incorporate by reference the factual allegations of paragraphs 1-86 and pleading further say:

87.     Under the terms of the Summary Plan Description ("SPD"), Defendants, and specifically the Benefit Fund's Board of Trustees which include Fensler, are charged with interpreting the Plan as well as "safe-keeping, investment and disbursement of the assets of the Plan." **(Exhibit 2, p. 4)**.

88.     Defendants breached its duty to keep the assets of the Plan safe as well as properly interpreting the Plan when they ignored IRS Rulings that were adverse to the Plan they promoted to Craig, and Craig relied on their assertions.  **(Exhibit 2, p. 4)**.

89.     Craig further relied on the provisions of the SPD that the assets of the Plan would be safe and that he was investing in a legitimate welfare benefit plan.


90.     Craig relied on McDowell and Benefit Fund (through Fensler)'s actions that seemed to create a valid union (such as paying union dues and distributing union cards) as well as the Plan's SPD.

91.     Craig's reliance on the terms of the SPD was proper given that he was not provided with a copy of the Plan itself.

92.     Due to Defendants' breach, Plaintiffs have suffered tax consequences in the amount of $135,211.93 and have had to retain attorneys.


RELIEF SOUGHT:

a.    Judgment against defendants, jointly and severally, in an amount in excess of $135,211.93;

b.    Restitution of commissions paid, union dues paid, and insurance premiums paid.

c.    Prejudgment interest;

d.    Attorney's fees [29 USCA §1132(g)(1)];

e.    Costs;

f.    Award any such other and further relief as the court deems just and proper.

## COUNT VII
## UNJUST ENRICHMENT
## [AGAINST ALL DEFENDANTS]
## [29 USC §1132(a)(3)]

Plaintiffs incorporate by reference the factual allegations of paragraphs 1-92 and pleading further say:

93.     29 USC §1132(a)(3) allows a plan participant to bring a civil action and to obtain appropriate equitable relief such as restitution.

94.     Even though the Plan was determined to be a tax shelter by IRS, Defendants Koenning, Fensler, Delpierre, McDowell, and their respective employers were unjustly enriched, on information and belief, by insurance commissions paid by Craig.

95.     With their superior knowledge and bargaining position, Defendants misled Craig into instituting a welfare benefit plan for death benefits and allowing a union to be formed at Galesburg Electric which turned out to be a sham and for which Plaintiffs were penalized.

96.     Defendants have been further unjustly enriched with Craig's insurance premium payments which Security Mutual presumably used to invest in other vehicles for profit.

97.     Plaintiffs relied on Defendants assertions that they were investing in a legitimate welfare benefit plan and that these contributions would be tax deductible.

98.     Defendants had reason to know that these contributions may not be tax deductible, yet Defendants did not inform Craig of any of these risks, and instead mislead him to believe that his tax deductions would be secure and that the Plan

received full IRS approval according to the IRS Determination Letter.  **(Exhibit 3, p. 17-20)**.

99.    Craig would not have made insurance premium payments to Security Mutual had he known of the risks of losing tax deductibility.

100.    Craig advanced these insurance premiums and commissions with the belief and reasonable expectation that he would be repaid with a tax deductible life insurance Plan that he could use as a vehicle for his impending retirement.

101.    Further, Craig advanced "legal fees" to McDowell's Professional Workers Master Contract Group in the amount of $200.00 per year.  **(Exhibit 12)**.

102.    McDowell has been unjustly enriched with Craig's payments of union dues for a union that the IRS found to be invalid and not entitled to tax deductions under 29 USC §419A(f)(5), despite McDowell's and Benefit Fund's assertions otherwise. **(Exhibit 7 (IRS Ruling), Exhibit 13)**.

103.    Defendants have been unjustly enriched with insurance premium payments by Craig as well as insurance commissions at Plaintiffs' expense, and Plaintiffs request restitution under USC §1132(a)(3).

RELIEF SOUGHT:

> a.    Restitution of any life insurance premiums paid by Plaintiffs into the Plan;
>
> b.    Restitution of any insurance commissions Defendants received in connection with the sale of the Plan to Plaintiffs;
>
> c.    Restitution of legal fees and union dues;
>
> d.    Prejudgment interest;
>
> e.    Attorneys fees [29 USCA §1132(g)(1)];
>
> f.    Costs;
>
> g.    Award any such other and further relief as the Court deems just and proper.

Respectfully submitted,

/s/ Robyn Mallon
Robyn Mallon
One of Plaintiff's Attorneys


Dated: June 10, 2009


Barry Barash (ARDC #108928)
Robyn J. Mallon (ARDC #6288379) of
Barash & Everett, LLC
Plaintiffs' Attorneys
256 South Soangetaha Road, Suite 108
Galesburg, IL 61401
Telephone: 309/341-6010
Fax:        309/341-1945
E-mail: Robyn@barashlaw.com

**CERTIFICATE OF SERVICE**

I hereby certify that on June 10, 2009, I filed the foregoing document with the Clerk of the Court via ECF which will send notice to the following:

Rex Linder
Gregory Rastatter
Attorneys for Security Mutual Life Insurance Company of New York
Heyl, Royster, Voelker & Allen
124 S.W. Adams, Suite 600
Peoria, IL 61612
rlinder@hrva.com
grastatter@hrva.com

Louis Orbach
Attorney for Security Mutual Life Insurance Company of New York
Bond, Schoeneck & King, PLLC
One Lincoln Center
Syracuse, NY 13202
orbachl@bsk.com

Jennifer L. Colvin
Attorney for David K. Fensler and United Employee Benefit Fund
Ogletree Deakins Nash Smoak & Stewart, P.C.
Two First National Plaza, 25th Floor
20 South Clark Street
Chicago, IL 60603
jennifer.colvin@odnss.com

Patricia K. Rummer
Attorney for Gerald Koenning, et al.
Law Offices of Patricia Rummer
5950 East Lincoln Avenue, Suite 500
Lisle, IL 60532
rummerlaw@msn.com


James W Davidson
Daniel B Meyer
Attorneys for Third Party Defendant, Marshall Katzman
One E. Wacker Drive, Suite 3400
Chicago, IL 60601
jdavidson@ohaganspencer.com
kkeating@ohaganspencer.com

dmeyer@ohaganspencer.com
ealmendarez@ohaganspencer.com

/s/ Robyn Mallon
Robyn Mallon
One of Plaintiff's Attorneys


Barry Barash (ARDC #108928)
Robyn J. Mallon (ARDC #6288379) of
Barash & Everett, LLC
Plaintiffs' Attorneys
256 South Soangetaha Road, Suite 108
Galesburg, IL 61401
Telephone: 309/341-6010
Fax:        309/341-1945
E-mail: Robyn@barashlaw.com